E-FILED
Friday, 07 September, 2012  02:14:50 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CHRISTOPHER P. ESKRIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10-CV-3264 |
| | ) | |
| DEBORAH K. FUQUA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and incarcerated in Western Illinois Correctional Center, pursues the following claims: 1) an Eighth Amendment claim that Defendants have been deliberately indifferent to Plaintiff's serious medical need for his prescribed medicine on a consistent basis; 2) a First Amendment retaliation claim based on Defendants' requirement that Plaintiff take his medicines in front of others, allegedly instituted after he filed a grievance; and, 3) a privacy claim based on Defendants' alleged disclosure of Plaintiff's medical condition by passing out his medicine in front of other inmates.  (d/e 7, p. 2.)  Defendants move for summary judgment.  For the reasons below, the Court will grant those motions.

**SUMMARY JUDGMENT STANDARD**

1

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact."  Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists.  Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011).  "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment."  McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant.  Id.

## FACTS

2

Plaintiff is currently incarcerated in Western Illinois Correctional Center, and the events in this case all occurred at Western.  He suffers from a serious and potentially life-threatening disease that requires him to take several medications daily.  When this diagnosis occurred is unclear.  In his response to the dispositive motions, Plaintiff states that he was diagnosed in 1993 and had been taking medicine for 14 years before the events here (d/e 61, p. 2), but in his Complaint he alleges that the medicines had been prescribed for only two years, since 2009 (Complaint, d/e 1, p. 4), and in his grievance dated May 8, 2010, he states that he has been receiving his medicine for three years (d/e 1-1, p. 2).  In any event, the relevant time period here appears to be from 2009 to the present.

In 2009, Plaintiff was prescribed the following medications for his condition: Viread (1 tablet daily), Kaletra (2 tablets, twice daily), and Epzicom (1 tablet daily).   According to Defendants, prescriptions for chronic conditions like Plaintiff's are first filled for sixty days.  The prison receives two bottles, each containing 30 days worth of the prescribed medicine.  One full bottle is given to the inmate.  When the inmate turns in that bottle empty, the other full bottle of medication is given to him, and a new 30-day order for the medication is submitted to the pharmacy.  (Def. Undisp. Facts 12-16, d/e 58).

Plaintiff does not dispute that this is the procedure that is supposed to be

followed.  He contends instead that this procedure is not in fact followed as a

general practice.  He alleges that he repeatedly did not receive his medicine

because Defendants failed to timely order the medicine or failed to ensure that the

pharmacy timely filled orders. (Pl.'s Dec., ¶¶ 13-14, d/e 61).  He also contends that

at times the prescription bottles he received had been opened and had pills missing.

Id.

Plaintiff is vague about exactly how often he missed his medicine due to

Defendants' actions or inactions.  His Complaint alleges seven or eight occasions.

(Complaint, pp. 4, 9, d/e 1.)  The pharmacy orders and medication administration

records provide more detailed information.  The 2009 records show that 30-day

orders were placed for all three medicines in January, February, March, April,

May, July, August, October, November (Epzicom only), and December.  (2009

Medication Administration Records, Pl.'s Dec., d/e 61-2, pp. 7-11, 13-17; Ex. to

Complaint, d/e 1-1, p. 5).  The Court sees no orders for June or September 2009.

However, the medical administration records do show that Plaintiff received refills

on all three medicines in June, 2009.  (June 2009 Medical Administrative Record,

Ex. to Complaint, d/e 1-1, p. 2.)  The September 2009 administration record

indicates that Plaintiff had received refills on all three medicines on August 22,

2009.  (September 2009 Medical Administrative Record, Ex. to Complaint, d/e 1-1,

p. 20.)

A 10-day gap does appear in February 2009 between the time Plaintiff turned in empty bottles for all three medicines and received  refills for Epzicom and Viread.  (February 2009 Medication Administration Record, Ex. To Complaint, d/e 1-1, p. 7.)  Defendants assert that Plaintiff had failed to timely turn in empty bottles.  They also contend that they did timely order refills, though the pharmacy has no record of the order.

An additional lag of 11 days appears in March 2009 for a refill on Epzicom. (March 2009 Medication Administration Record, attached to Complaint, d/e 1-1,p. 8.)  And, a five day lag for refills appears in August, 2009, for Epzicom.  (August 2009 Medication Administration Record, attached to Complaint, d/e 1-1,p. 15.)

For the year 2010, the medical administration records show that Plaintiff received refills of all three medicines in January 2010.  (January 2010 Medication Administration Record, attached to Complaint, d/e 1-1 p. 26.)  The February record reflects that Plaintiff did not turn in empty bottles but received 6 Viread pills on February 20, 2010.  Id. p. 27.  Plaintiff turned in an empty bottle of Viread on March 3, 2010 and received a refill.  Id. p. 28.

The records further show that a sixty day supply of all three medicines was ordered in April, 2010 (a 30-day supply on April 7 and a 30-day supply on April

15).  (April 2010 pharmacy order, attached to Pl.'s Dec., d/e 61-2, pp. 2-3.)

Another thirty day supply was ordered on June 9 and July 15, 2010.  (June and July

2010 pharmacy orders, attached to Pl.'s Dec., d/e 61-2, pp. 4-5).  The next month,

on August 13, 2010, a 30 day supply was ordered of the Epzicom and Viread.

(August 2010 pharmacy order, attached to Pl.'s Dec., d/e 61-2, p. 6).

   A prison doctor put Plaintiff on "watch take" on May 5, 2010, which meant

that the nurses dispensing the medicine had to watch Plaintiff take the medicine

during med line.  The watch take order resulted from a shakedown of Plaintiff's

cell on May 4, 2010, which had uncovered 16 Viread, 89 Kaletra, and 13 Epzicom

pills in Plaintiff's cell.  Plaintiff believes that the shake down and watch take were

ordered in retaliation for a grievance had filed on May 4, 2010.  No May 4th

grievance is in the record.  Plaintiff asserts that unidentified correctional officers

confiscated the May 4th grievance.  However, Plaintiff does not deny that he had

these pills in his cell.  In a grievance dated May 8, 2010, Plaintiff asserts that the

watch take violated his privacy and complains about the confiscation of his

medicine.  He states in that grievance, "I've been recieveing [sic] my high-risks

medications for 3 years without incident.  Now I've been placed on an open med-

line.  I have a right to privacy . . . Now I'm being denied that privacy because of

medical nursing staff incompetence to place medical prescription orders/and

deliver medication on date." (5/8/10 grievance, attached to Complaint, d/e 1-1, p.

2.)  Plaintiff's 5/8/10 grievance lists four dates of alleged missed doses (May 7,

May 9, July 10, and July 21, all in 2010), but three of those dates occurred after the

date of the grievance.  Id. p. 3.  The Court does not understand how a grievance

filed on May 8 can refer to events which occurred after May 8.  Id.

Plaintiff voluntarily stopped taking his prescribed medicines in or around

September, 2010, because of symptoms of heart palpitation, numbness and

tingling, which Plaintiff attributed to the medications.  (IDOC Doctor's Note, Def.

Ex. 3, d/e 58-1).  The doctor accordingly discontinued the medications Tenofovir

(Viread), Epzicom, and Kaletra, and started a different regimen of medicines:

Darunavir, Norvir, and Truvada.  Id.

Plaintiff filed this case on September 20, 2010.  His Complaint alleges seven

or eight times when he did not receive his medication.  His response to the

summary judgment adds two more alleged missed doses:  one on January 2, 2011,

and another February 3, 2011.  (Pl.'s Dec. p. 10, d/e 56.)   On July 6, 2012 he filed

a document alleging that he did not receive his medicine on June 29, 2012.  (d/e

81, docketed as a motion to intervene.)

According to Defendants, on July 17, 2012, Plaintiff was transferred to

segregation for refusing housing, and, during an inventory of Plaintiff's property

7

incident to that transfer, officers inventoried 23 Truvada pills, 25 Isentress pills, 42 Norvir pills, and 27 Prezisia pills.  The medical administration records show that Plaintiff returned an empty bottle of Isentress on June 27, 2012.  (Def.'s resp. to Pl.'s motion, d/e 82, p. 2.)  Plaintiff denies that he had extra medicine in his cell. (Pl.'s reply, d/e 84.)

## ANALYSIS

### I.     Eighth Amendment claim: No evidence suggests deliberate indifference to Plaintiff's need for his prescribed medicine.

Plaintiff has a serious medical need for his prescribed medicine, but his evidence does not support an inference that Defendants have been deliberately indifferent to that need.  Deliberate indifference is not negligence or gross negligence.  McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010).  Deliberate indifference is akin to criminal recklessness, "proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and 'either acts or fails to act in disregard of that risk.'"  Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012)(quoting Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011).  Plaintiff's evidence does not show that he was subjected to a substantial risk of serious harm, or that Defendants were deliberately indifferent.

The record does show some delays in the administration of medicines to Plaintiff.  The parties dispute the reason for those delays.  Defendants contend that

8

Plaintiff failed to timely turn in empty bottles or turned them in too early and did not take his pills as prescribed. Plaintiff contends that he always returned in his empty bottles in a timely manner.

The dispute over the cause of the delays is not material because the delays do not demonstrate a serious risk of harm to Plaintiff. The delays were sporadic, not systemic. In his May 8, 2010 grievance, Plaintiff identifies only four dates of missed doses in 2010. In later pleadings, he adds two dates in 2011 and a three day period in 2012. That totals to nine days of missed doses over three years. The medical administrative records show about 26 days of delay, all in 2009— a 10-day delay in February 2009 for Epzicom and Viread refills; an 11-day delay in March 2009 for an Epzicom refill; and, a 5-day delay in August 2009 for an Epzicom refill.

Whether Plaintiff was actually without medicine during these delays is not clear. The Court does not understand how Defendants could be responsible for missed doses when Plaintiff had over 120 extra pills in his cell in May 2010. Plaintiff admits to the confiscation of those pills in both his grievance dated May 8, 2010, and in his response to the summary judgment motion. (Pl.'s Dec., ¶¶ 8, 15.)

In any event, viewing the evidence most favorably to Plaintiff was without his medicine, at most, for 26 days in 2009, spread out over several months; four

days in 2010; two days in 2011; and, three days in 2012.  These delays are not

enough to reasonably infer that a systemic problem existed in the administration of

Plaintiff's medicine.  Plaintiff admitted in his May 8, 2010 grievance that he had

been receiving his medicine "without incident" until the watch take was instituted

in May, 2010.  The pharmacy order and medical administration records also show

that the procedure in place generally worked.  No evidence suggests that

Defendants were aware of any systemic problem or were deliberately indifferent to

Plaintiff's need for his medicine.

Further, Plaintiff has no evidence to suggest that these delays placed him at a

substantial risk of harm or caused him any harm.  He claims that he suffered side

effects and physical harm from the interruptions, but he has no admissible evidence

to support that conclusion.  In fact, Plaintiff voluntarily stopped taking the

medicine altogether in September 2010 and reported an improvement in those

claimed side effects.

In sum, no evidence suggests that Plaintiff was at a substantial risk of not

receiving his medicines, that the doses he did miss placed him at a substantial risk

of harm, or that Defendants were aware of any substantial risk that Plaintiff might

not receive his medications consistently.

**II.    Retaliation: No evidence suggests that Plaintiff was placed on "watch
take" in retaliation for a grievance filed by Plaintiff.**

Plaintiff asserts that he filed a grievance on May 4, 2012, but the grievance is not in the record.  He asserts that unidentified officers confiscated the grievance. He alleges that in response to this grievance his cell was searched, his pills were confiscated, and he was put on watch take.

Plaintiff has no evidence that Defendants were even aware of a grievance filed on May 4, 2012.  Further, no evidence suggests that they ordered the shake down of Plaintiff's cell, the confiscation of his pills, or the watch take.  The watch take was ordered by the prison doctor, not Defendants.  Additionally, no evidence suggests that the watch take was ordered out of retaliation for any grievance. Defendants have shown that the watch take was ordered because Plaintiff had over 120 pills in his cell, indicating that he was not taking his medicine.  Plaintiff does not offer any evidence to dispute this legitimate reason for the watch take order. Kidwell v. Eisenhauer, 679 F.3d 957, 965 (7th Cir. 2012)(Plaintiff must ultimately prove that the adverse action would not have occurred even without the retaliatory motive).  Because no rational juror could find for Plaintiff on his retaliation claim, summary judgment will be granted to Defendants.

## III.    Privacy: Defendants did not violate Plaintiff's privacy rights by passing out his medicine on watch take.

Plaintiff asserts that watch take violated his right to privacy by disclosing his medical condition.  He alleges that "[t]his open med-line exposes my medication

11

bottles to the whole wing inmate population, who knows this medication on sight."
(Complaint, p. 5, d/e 1.)

Whether a constitutional right to privacy exists for an inmate's medical information is not clear in this Circuit. *See* <u>Anderson v. Romero</u>, 72 F.3d 518, 523-24 (7th Cir. 1995). However, even assuming such a right exists, Plaintiff's assertion that other inmates gleaned his medical condition from med line is based on speculation. No evidence suggests that other inmates were close enough to read the labels on Plaintiff's medicines, did read those labels, or knew what condition Plaintiff's prescribed medicines treated. *See* <u>Salas v. Grams</u>, 2010 WL 2757322 * 4 (W.D. Wis. 2010)(unpublished)(no claim where prison had legitimate penological interest in conducting some medical appointments in dayroom where inmate's medical information might be overheard where plaintiff had no evidence that any private information was actually disseminated). No evidence suggests that the nurses disclosed Plaintiff's condition while dispensing Plaintiff's medicine to him.

Alternatively, even if this kind of inadvertent and unintentional disclosure did violate Plaintiff's privacy rights, Defendants' reason for requiring Plaintiff to take his medicines during med line was reasonably related to the prison's legitimate goal in making sure that Plaintiff takes his medicine. As already

12

discussed, Plaintiff admitted to the confiscation of over 120 pills in his cell in May

of 2010.  Whatever the contours of Plaintiff's right to privacy in his prescriptions,

that right is subject to the legitimate concern of the medical staff in ensuring

Plaintiff takes his medicine.  *See*, *e.g.*, <u>Simpson v. Joseph</u>, 248 Fed.Appx. 746 (7th

Cir. 2007)(unpublished, not precedential)(prisoner's privacy right in nondisclosure

of his medical condition was subject to the legitimate concerns of the prison).

IT IS THEREFORE ORDERED:

1) Plaintiff's motion to inform the Court that he was not provided his

medicines on June 29, 2012 is granted (d/e 81).  The Court has considered that

information in ruling on the motions for summary judgment.

2) Defendants' motions for summary judgment are granted (d/e's 53, 58).

The clerk of the court is directed to enter judgment in favor of Defendants and

against Plaintiff.  All pending motions are denied as moot (d/e 81), and this case is

terminated, with the parties to bear their own costs.  All deadlines and settings on

the Court's calendar are vacated.

3) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal

with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).

A motion for leave to appeal in forma pauperis should identify the issues Plaintiff

will present on appeal.  See Fed. R. App. P. 24(a)(1)(c).  If Plaintiff does choose to

13

appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED: September 7, 2012

FOR THE COURT:


_____**s/Sue E. Myerscough**_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE